Alex ZUPNICK; Herbert H. Levess; Allen Kopelson, individually and on behalf of all others similarly situated, Plaintiffs–Appellees,

v.

Mark H. FOGEL; JEM Management Associates Corp.; Frederick M. Mintz; Judith Reaume and Mintz & Fraade, P.C., Defendants–Appellants,

Thompson Parking Partners, Limited Partnership III; Jack Fogel, B.S.D. Parking Consultants, Inc. and Martin Prew, Defendants,

Stanley Muss, Defendant–Appellee,

Alex Zupnick; Herbert H. Levess and Allen Kopelson, Counter–Defendants,

Stanley Muss, Cross–Defendant.

Judith Reaume; Frederick M. Mintz; JEM Management Associates Corp. and Mark H. Fogel, Counter–Claimants,

Mark H. Fogel; JEM Management Associates Corp.; Frederick M. Mintz and Judith Reaume, Cross–Claimants.

SPERBER ADAMS ASSOCIATES; Melvin R. Platt; Joan Kahn; Robert W. Brooks; Anthony Widman, as Trustee, Anthony Widman Pension Plan; Joseph Radositi; Harold L. Hitchins, Jr.; Dorothy W. Boswell; James W. Zulliger, Jr.; Stanley H. Stolar; Mark J. Kushner; Joseph Greenberg; Barbara Greenberg; Russell C. Jordan; James J. Jeffreys; Frederick D. Sewell; Robert P. Gormly, Sr.; Anthony Arangio; Ra-

jiv Saxena; Lee B. Trevino; Albert Roeper; Charles W. Fletcher; Vernon Potter, as Trustee for Dallas Wholesale Employees Trust; Robert Israeloff; Rajkumar Mariwalla; Rose Aronin; S. Mohandoss; Kala Mohandoss; William Glazer; Max Cohen; Max Buchwald; Rosemary Buchwald; Philip J. Smith; Mary Page Young; Suri Ponamgi; Harold Levine; John G. Scranton; Louis Rubinstein; Rachel Rubinstein; Arven Aronin; Gabe Leventhal; Lewis B. Lane; David S. Kidder; Michael S. Ley, for Henry C. Kunkel; Vincent D. Caracio; William M. Yamanaka; Rose E. Wolf; Ronald J. Ross, Jr. and Donald T. Cohen, Plaintiffs–Appellees,

v.

JEM MANAGEMENT ASSOCIATES CORP.; JEM Parking Management Corp.; Mark H. Fogel; Judith Reaume; Frederick M. Mintz; Jack Fogel; Stanley Muss, B.S.D. Parking Consultants, Inc., Cross–Defendants.

Goldstein, Golub, Kessler & Company, P.C.; JEM Management Associates Corp.; JEM Parking Management Corp.; Mark H. Fogel; Judith Reaume; Frederick M. Mintz, Cross–Claimants,

Jack Fogel; Stanley Muss; Lewis Helpland & Co.; Goldstein, Golub, Kessler & Company, P.C.; Kessler & Company; B.S.D. Parking Consultants, Inc.; Martin Prew, Defendants,

Stanley Muss, Defendant–Appellee,

JEM Management Associates Corp.; JEM Parking Management Corp.; Mark H. Fogel; Frederick M. Mintz, Defendants–Appellants.

Nos. 680, 688, Dockets 92–7870, 92–7872.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1992.

Decided March 22, 1993.

---

Ronald Cohen, New York City, for appellants.

Robert Zicklin, New York City (Elliot L. Evans, Laventhall & Zicklin, of counsel), for appellees Alex Zupnick, Herbert H. Levess and Allen Kopelson.

Robert I. Bodian, New York City (Erica Lehrer, Bodian & Eames, of counsel), for appellees Sperber Adams Associates, et al.

Before MESKILL, Chief Judge, MAHONEY and WALKER, Circuit Judges.

MESKILL, Chief Judge:

These two related appeals involve the partial settlement of two actions brought on behalf of investors in limited partnerships that were formed to acquire leaseholds in, and operate, two parking garages in New York City. Some of the nonsettling defendants in *Alex Zupnick v. Mark H. Fogel*, 89 Civ. 6607 (S.D.N.Y. filed Oct. 5, 1989) (*Zupnick*), appeal a final order of the United States District Court for the Southern District of New York, Martin, J., entered on July 9, 1992. Some of the nonsettling defendants in *Sperber Adams Assocs. v. JEM Management Assocs. Corp.*, 90 Civ. 7405 (S.D.N.Y. filed Nov. 19, 1990) (*Sperber Adams*), appeal a final order of the same court entered on the same day.[1] These two orders approved the settlement of the respective plaintiff class' claims against Stanley Muss, a defendant in both actions. The district court found the proposed settlements to be "in all respects fair, just, reasonable, adequate and in the best interests of the Class, and each of the members of the Class." We address both appeals together because of their factual similarity and because the settlement agreements at issue are interdependent.

The appellants in both cases (the nonsettling defendants) argue that the district court erred in certifying the orders at issue as final judgments under Fed.R.Civ.P. 54(b). Making an unusual argument for appellants, they urge us to conclude that, as a result of this improper certification of the orders as final, we lack appellate jurisdiction to hear these appeals. The nonsettling defendants seek such a holding because it would destroy both the *Zupnick* and the *Sperber Adams* settlements which are contingent on the finality of these or-

---

1. Defendants Mark H. Fogel, Judith Reaume, Frederick M. Mintz and JEM Management Associates Corp. are appellants in both the *Zupnick* and the *Sperber Adams* appeals. In addition, defendant Mintz & Fraade, P.C. appeals the final order in *Zupnick* and defendant JEM Parking Management Corp. appeals the final order in *Sperber Adams*.

ders. They also contend that the district court erred in approving these settlements and in failing to set forth adequately the basis for its approval. The nonsettling defendants in *Sperber Adams* additionally argue that the settlement violates their Fifth Amendment rights because it disposes of their property interest in the 79th Street Garage without according them the opportunity to assert their claims.

The plaintiff-appellee class in *Zupnick* contends that the nonsettling defendants have no standing to appeal the order approving the proposed partial settlement in that case because the order does not affect their rights. Because we hold that the nonsettling defendants do not have standing to appeal either of these orders, we dismiss the appeals.

## BACKGROUND

These appeals arise out of the acquisition by a number of investors of interests in two limited partnerships. Thompson Parking Partners, Limited Partnership III (Thompson Limited Partnership) was formed in June 1988 to acquire a leasehold interest in, and to operate, an existing parking garage in Manhattan's Greenwich Village (Thompson Street Garage). JEM Parking Partners, Limited Partnership IV (79th Street Limited Partnership) was formed in September 1988 to acquire a leasehold interest in, and to operate, an existing parking garage in Manhattan's Upper East Side (79th Street Garage). Appellant Mark Fogel and others formed corporate appellant JEM Management Associates Corp. (JEM Management) to syndicate the Thompson Limited Partnership and corporate appellant JEM Parking Management Corp. (JEM Parking) to syndicate the 79th Street Limited Partnership. JEM Management and JEM Parking are the managing general partners of the respective partnerships. Fogel is the majority stockholder, president and a director of both JEM Management and JEM Parking. He is also the administrative general partner of both limited partnerships. Appel-

lants Judith Reaume and Frederick Mintz are shareholders, directors and, in the case of Reaume, an officer of both JEM Management and JEM Parking. Appellant Mintz & Fraade, P.C. represented the Thompson Limited Partnership in connection with the acquisition of the leasehold interest in the Thompson Street Garage and, according to the amended complaint in *Zupnick*, participated in the preparation and distribution of the offering materials for the Thompson Limited Partnership.

The plaintiffs-appellees claim they were induced to invest in the partnerships based on false and misleading information contained in private placement memoranda and investment summaries (the offering materials) allegedly prepared or disseminated by JEM Management, JEM Parking, Mark Fogel, Reaume, Mintz and others. The *Zupnick* action was filed on October 5, 1989 on behalf of all purchasers of limited partnership units in the Thompson Limited Partnership who had sustained damages. The district court subsequently certified it as a class action. *Zupnick v. Thompson Parking Partners*, No. 89 CIV 6607, 1990 WL 113197, at *6 (S.D.N.Y. Aug. 1, 1990). The amended complaint alleged, *inter alia*, that the offering materials failed to disclose that, of the $2.25 million purportedly paid to purchase the leasehold interest, $850,000 was to be diverted to, or for the benefit of, the defendants. The amended complaint also alleged that the offering materials failed to disclose that the leasehold interest purchased by the Thompson Limited Partnership was commercially worthless. The *Zupnick* plaintiffs asserted claims of violations of federal securities law, the Racketeer Influenced and Corrupt Organizations Act (RICO) and state common law.

On November 19, 1990, the *Sperber Adams* action was filed on behalf of all investors who sustained damages as a result of their purchase of limited partnership units in the Thompson or the 79th Street Limited Partnerships. The *Sperber Adams* plaintiffs alleged wrongdoing in connection with the promotion and sale of the limited partnership shares.[2] The

---

**2.** In June 1992, the district court, for the sake of

*efficiency and with the approval of counsel for*

amended complaint in this case claimed, *inter alia*, that the offering materials failed to disclose that the leasehold interest in the 79th Street Garage was commercially worthless and that, out of the $1.65 million purportedly paid to purchase it, defendant Stanley Muss, owner of the fee interest in the garage, received only approximately $900,000. The *Sperber Adams* plaintiffs alleged similar causes of action as those asserted in *Zupnick*. In addition to damages, they also sought the appointment of a receiver for both partnerships. In April 1991 the district court complied with this request and appointed Joseph Aronauer, Esq. as Receiver for both the 79th Street and the Thompson Limited Partnerships. The court stated that it found it necessary to do so for the protection of the rights of the limited partners and the creditors of the two limited partnerships.

Almost immediately after the Receiver was appointed, counsel for the appellees and the Receiver learned that the partnerships were several months in arrears on the rent and other payments for both garages and that eviction actions were pending in New York state court brought by the landlords of both garages. The nonsettling defendants offered no defense to these proceedings. In fact, appellant Mark Fogel stated in open court that the partnerships had no funds to cure the defaults.

Following a finding by the Receiver that the Thompson Street Garage was not economically viable, the leasehold interest in the Thompson Street Garage was returned to the landlord by agreement of the Receiver, the landlord and the general partners of the Thompson Limited Partnership. Because Muss had been named as a defendant in the *Sperber Adams* case, the district court stayed the summary state court eviction proceeding that Muss had commenced

against the 79th Street Limited Partnership because of its failure to pay rent. In May 1991 the court held a hearing ·in the *Sperber Adams* case on Muss' motions to dismiss the claims lodged against him and to vacate the order to stay the state proceeding. The district court made the following preliminary findings of fact. *See Sperber Adams Assocs. v. JEM Management Assocs. Corp.*, No. 90 Civ. 7405, 1991 WL 156337, at *1–3 (S.D.N.Y. Aug. 5, 1991).

Muss is primarily in the business of purchasing and selling leasehold interests in parking garages. He obtained in late 1985 or early 1986 a fifteen year lease for the Thompson Street Garage in return for his promise to pay an escalating rent which started at $37,000 per month plus taxes and other related expenses. Muss also obtained in 1986 the fee interest in the 79th Street Garage for $1.5 million. Both deals were negotiated by Jack Fogel, Muss' regular broker.

The district court also found that, in 1987, Muss decided to sell leasehold interests in the garages. Jack Fogel spoke to Muss about selling the leasehold interests to a syndicate of investors procured by Mark Fogel, Jack Fogel's son. No other effort was made· to market the leasehold interests. Mark· Fogel and others formed JEM Parking and JEM Management to syndicate the limited partnerships. Muss sold his leasehold interest in the Thompson Street Garage to the Thompson Limited Partnership and a twenty year leasehold in the 79th Street Garage to which he owned the fee to the 79th Street Limited Partnership.

At the hearing, the evidence revealed that, of the $2 million Muss received for assigning his fifteen year leasehold interest in the Thompson Street Garage, he retained only approximately $900,000 to $1

---

the *Sperber Adams* plaintiffs, dismissed all claims in *Sperber Adams* related to the Thompson offering as duplicative of the claims raised in *Zupnick*. *Sperber Adams Assocs. v. JEM Management Assocs. Corp.*, No. 90 Civ. 7405, 1992 WL 138344 at *1 (S.D.N.Y. June 4, 1992). The *Sperber Adams* plaintiffs are in the process of seeking to have a class certified for all limited partners of the 79th Street Limited Partnership

as against the remaining defendants. For purposes of the settlement with Muss, the district court has certified as a class the purchasers of units of limited partnership interests in the 79th Street Limited Partnership, except defendants, members of their immediate families, their heirs, successors or assigns, and any affiliate of any defendant.

million. Taxes consumed only $130,000. What the district court termed "the missing" $850,000, *Sperber Adams Assocs.*, 1991 WL 156337 at *2, was returned by Muss to an alleged entity, B.S.D. Parking Consultants, as a brokerage commission. Neither Muss nor his counsel was able to identify B.S.D.'s principals and the court found that there was "a strong inference" that the Fogels or the general partners received the large brokerage commission. The court noted that even though Muss retained only $1 million at most, the partnership's offering materials told the potential investors that $2 million was being paid for the leasehold interest. Similarly, the court found that, although the 79th Street Limited Partnership's offering materials stated that the purchase price was $1.65 million, Muss received only approximately $950,000 for his sale of a twenty year leasehold interest in that garage. In the case of the 79th Street deal, the brokerage commission apparently was paid directly by the partnership's general partners rather than being funneled through Muss.

The district court found that the 79th Street Limited Partnership's inability to pay the unpaid rent presumably would allow Muss the return of his garage. The limited partners, however, sought to prevent Muss from recovering the leasehold interest in the 79th Street Garage. They argued that Muss' motion to vacate the stay of the state court eviction proceeding should be denied to allow the leasehold to be held by the Receiver to offset any potential judgment the limited partners might achieve against Muss for aiding and abetting the fraud of the nonsettling defendants in soliciting the limited partners as investors.

After hearing the testimony at the hearing, the district court concluded that the evidence "pretty clearly establishes that a blatant fraud was committed on the investors in these partnerships," and that "Mark Fogel and Jack Fogel, among others, were knowing participants in the scheme," *Sperber Adams Assocs.*, 1991 WL 156337 at *3. The judge also found that "[w]hile Mr. Muss says that he is totally unaware of this, I certainly think a prima facie case of

his participation in this fraud can be found." The district judge denied Muss' request to vacate the stay of the state eviction proceeding and prevented the return of the 79th Street Garage to Muss. *Sperber Adams Assocs.*, 1991 WL 156337 at *6. The court held that because the plaintiffs had presented a *prima facie* case of Muss' liability, they did not have to pay rent to Muss during the pendency of this action. The judge noted, *inter alia*, that the damages the limited partners sought from Muss far exceeded the unpaid rental. *Id.*

In April 1992, Muss and the plaintiffs submitted to the district court a proposed settlement of the plaintiffs' claims against Muss in both cases. The settlement in *Zupnick* provides that Muss will pay the plaintiff class the sum of $490,000, which is almost one-quarter of the total investment of $2,250,000 made by class members. The *Sperber Adams* settlement provides that Muss will pay $360,000 to the plaintiff class, which is more than twenty percent of the total investment made by class members. As part of the *Sperber Adams* settlement, the 79th Street leasehold will be returned to Muss. From the sum paid by Muss, plaintiffs' attorneys will be paid fees and expenses and litigation will continue against the remaining defendants in both cases. The settlements also provided that a final order was to be entered pursuant to Fed.R.Civ.P. 54(b) to permit the funds to be distributed immediately to the members of the class.

On June 22, 1992, the nonsettling defendants submitted their objections to the proposed settlements to Judge Martin. They argued that they had a continuing interest in the partnerships and the assets of the partnerships. They objected to the provision in the *Sperber Adams* settlement which called for the relinquishment of the leasehold interest in the 79th Street Garage to Muss, who is the fee owner. The nonsettling defendants also argued that they had interposed two cross-claims against Muss based on his allegedly materially false fraudulent misrepresentations to them with respect to the sale of the ga-

rages, and that these were direct claims, not merely claims for contribution. The district court held a hearing on June 26, 1992 concerning the proposed settlements. The Receiver reported to the court that the 79th Street Garage was not a viable entity and therefore the 79th Street Limited Partnership was not giving up anything of value by returning it to Muss. No member of either class objected to the settlements.

On July 9, 1992, the district court entered an order in both the *Zupnick* and *Sperber Adams* cases approving the settlements between the plaintiff-appellee classes and defendant Muss. It is from these orders that some of the nonsettling defendants now appeal.

## DISCUSSION

■ The *Zupnick* plaintiff-appellee class contends that the nonsettling defendants do not have standing to appeal the court order approving the settlement agreement. Because we agree and find this argument dispositive of both appeals, we need not reach the merits of the nonsettling defendants' arguments. Although the plaintiff-appellee class in *Sperber Adams* did not argue in its briefs that the nonsettling defendants lacked standing to bring this appeal, at oral argument, counsel for this class contended that no rights of the nonsettling defendants were affected by the settlement agreement. In any case, the question of standing is a "threshold determinant[ ] of the propriety of judicial intervention." *See Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975). Therefore, we consider whether the nonsettling defendants have standing to bring either of the two appeals before us.

■ Usually, a nonsettling defendant lacks standing to object to a court order approving a partial settlement because a nonsettling defendant is ordinarily not affected by such a settlement. *See, e.g., Waller v. Financial Corp. of America*, 828 F.2d 579, 582–83 (9th Cir.1987); *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1232–33 (7th Cir.1983); *In re Viatron Computer Systems Corp. Litigation*, 614 F.2d 11, 14 (1st Cir.), *cert. denied sub nom. Arthur Andersen & Co. v. Stewart*, 449 U.S. 826, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980); *see also* 3B James W. Moore & John E. Kennedy, *Moore's Federal Practice* ¶ 23.-80[5] (2d ed. 1992) ("A co-defendant has no standing to appeal from a consent decree that binds him in no way and does not affect his legal rights."). "This rule advances the policy of encouraging the voluntary settlement of lawsuits." *Waller*, 828 F.2d at 583. Because, however, courts also have a duty to protect the rights of the parties before them, there is a recognized exception to this general rule which "permit[s] a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement." *Id.; see also Quad/Graphics, Inc.*, 724 F.2d at 1233. We conclude that the nonsettling defendants are not entitled to appeal these orders because they have not convinced us that the settlement agreements cause them to suffer any legal prejudice.

The nonsettling defendants basically claim that their rights are affected by the orders in question in three ways. They contend the orders: (1) potentially foreclose them from bringing their cross-claims against Muss, (2) extinguish their property rights in the 79th Street Garage, and (3) deprive them of the repayment of certain loans to the partnerships. We address each of these contentions in turn.

We are not persuaded that the nonsettling defendants are foreclosed from bringing their cross-claims against Muss. They argue that the stipulations of settlement (the Settlement Agreements) purport to extinguish "any and all claims for relief, demands, rights, actions, and causes of action (whether ... derivative or individual in nature), ... that have been, could have been, or in the future might be asserted ... by any or all of the Non–Settling Defendants against Muss ... arising out of ... [this] transaction." While the final orders issued by the district court state that the court approves of the Settlement Agreements in their entirety, the district court made clear during oral argument that these agree-

ments were not binding on the nonsettling defendants. Judge Martin stated to the nonsettling defendants: "The stipulation is not binding on you. You are not a party to it."

The nonsettling defendants make much of the assertion they claim Muss made in his letter brief submitted to this Court that the Settlement Agreements resolved their two pending cross-claims against him. Their reliance on this statement is misplaced. The district court has already stated that the Settlement Agreements are not binding on the nonsettling defendants and to the extent that Muss said anything to the contrary it is irrelevant. In fact, however, Muss' letter specifically states: "[I]f, indeed, the [nonsettling defendants] ... ha[ve] valid 'direct' claims against Muss, the settlement does not even purport to extinguish such claims." His earlier statement relied on by the nonsettling defendants simply stated Muss' belief that the cross-claims were just disguised claims for contribution or indemnity and as such were barred by the settlements. Even as to these types of claims, as Muss pointed out, the Settlement Agreements fully protect the nonsettling defendants.[3] Finally, we note that, during oral argument, counsel for the nonsettling defendants conceded that he did not believe that he was necessarily prevented from pursuing Muss.

We also are not persuaded that the orders of the district court extinguish property rights of the nonsettling defendants in the 79th Street Garage. At the time the Receiver was appointed, the 79th Street Limited Partnership had been in default for several months in rent payments on the 79th Street Garage leasehold interest and had failed to make other mandatory payments including taxes owed. There was a pending eviction proceeding to which it had raised no defense. Indeed, appellant Mark Fogel testified that the garage was operating at a monthly loss and that the partner-

ship did not have the funds to cure the default.

The nonsettling defendants were provided with notice and a hearing on the fairness of both Settlement Agreements prior to the district court's approval of them. At the hearing, in addition to arguing that the Settlement Agreements purported to foreclose their right to bring claims against Muss, the nonsettling defendants also argued that it was not permissible for their property rights in the 79th Street Garage to be extinguished by agreement of other parties. The judge noted that there was no defense to the state eviction action other than a possible cross-claim in this proceeding. In response to the nonsettling defendants' contention that it was possible that the financial status of the leasehold on the 79th Street Garage had since improved, the judge inquired of the Receiver for a report. The Receiver stated that the 79th Street Garage was not a viable entity given the amount of rent the limited partnership was obligated to pay. He also stated that the partnership was not giving up anything of value in returning the leasehold interest to Muss.

Therefore, under the lease entered into by Muss as Landlord and the 79th Street Limited Partnership as Tenant for the 79th Street Garage, the nonsettling defendants had already forfeited their property interest in the garage. The lease provides that if the partnership defaulted in its rent or tax payments it would lose its rights to the leasehold interest. It states, in pertinent part, in paragraph 17 entitled "Default:"

[I]f Tenant shall make default in the payment of the rent ... or in making any other payment herein required; then ... Landlord may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, ... and hold the premises as if this lease had not been made and Tenant hereby waives the service of notice of intention to re-

---

**3.** The Settlement Agreements provide that "Plaintiffs and the Class agree to reduce or satisfy any judgment obtained either by settlement or after trial against Non–Settling Defendants, or any of them, to the extent necessary to extinguish any claims of such Non–Settling Defendants for indemnity or contribution from Muss, as may be determined by the Court or jury."

enter or to institute legal proceedings to that end.

Absent the stay by the district court of the state foreclosure proceeding, it is clear that the 79th Street Garage leasehold would have been returned imminently to Muss, the fee owner. In fact, the leasehold on the Thompson Street Garage had already been returned to the fee owner of that property. The district court denied Muss' motion to vacate the stay of the state court action because, among other reasons, the damages the plaintiffs sought from Muss far exceeded the unpaid rentals. The court thus implied that the eviction action should be stayed and the Receiver should retain possession of the 79th Street Garage as a potential setoff against the claims by the limited partners against Muss. The nonsettling defendants cannot now be heard to complain that the orders in question extinguished their rights in the 79th Street Garage; the record makes clear that they had no rights remaining to extinguish.

Finally, we are not convinced that the orders at issue deprive the nonsettling defendants of the repayment of certain loans they claim they made to the partnerships. The nonsettling defendants argue they are entitled to a return of these loans prior to distribution to the limited partners. They contend that the limited partners should not be allowed to give up the 79th Street Garage because the partnership agreements give priority to repayment of any loans made by the nonsettling defendants to the partnerships.[4] The appellees point out that this argument was not raised either in the pleadings or during the hearing before Judge Martin on the fairness of the settlement.

Even presuming the loans the nonsettling defendants now allege they made were valid, the return of the 79th Street Garage to Muss does not affect the ability of the 79th Street Limited Partnership to

repay them. The court-appointed Receiver has stated that the 79th Street Garage has no value to the partnership. Therefore, returning the leasehold to Muss does not deprive the partnership of any asset that could be used to repay any debts. Because we have already decided that the nonsettling defendants have no remaining rights left in this property, their claim that they have standing to appeal the final orders because they now allege the partnerships owe them money is without merit.

CONCLUSION

The two final orders of the district court at issue in these appeals do not affect the rights of the nonsettling defendants. We therefore dismiss both appeals for lack of standing.

---

4. The nonsettling defendants raise this argument in their reply briefs in both *Zupnick* and *Sperber Adams* apparently claiming they made loans to both the Thompson and the 79th Street Limited Partnerships. In both briefs they argue that the existence of these loans prevents the return of the 79th Street Garage to Muss. We fail to understand how loans made to the Thompson Street Limited Partnership could prevent the return of the 79th Street Garage. Therefore, we address this argument only as it applies to the 79th Street Limited Partnership.