**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

In re: INTEGRA REALTY
RESOURCES, INC.; INTEGRA -
A HOTEL AND RESTAURANT
COMPANY; BHC OF DENVER,
INC.,

     Debtors.

---

JEFFREY A. WEINMAN, as Trustee
for the Integra Unsecured Creditors'
Trust,

     Plaintiff - Appellee,

v.

FIDELITY CAPITAL
APPRECIATION FUND,

     Defendant - Appellee,

AD HOC PROTECTIVE
COMMITTEE FOR SHOW BIZ
STOCKHOLDERS; RODNEY J.
AXTELL, individually and as
custodian for JONATHAN AXTELL;
MARY E. AXTELL; EUNICE H.
BECK; ROBERT R. BECK;
RICHARD H. BECK; ELEANOR S.
BECK; MICHAEL BENENSON;
KERRI BENESON, as Trustees;
JULIUS B. BINDER, as Trustee;

No. 99-1344

BINDERS' BIG MEN'S STORE, INC.; JAMES BOGEAZIS; JOSEPH M. COCQUOYT; MAURICE GARDLER; DAVID GARDNER; MARTIN GREENBERG; LEON GREDAHL; ROBERT J. HARRIS; MICHAEL J. HAYES; EDWARD HERZIG; RODNEY WILLIAM KENNOW; RICHARD O. JACOBSON; FERN LAZAR; MURRAY LAZAR; KATHRYN L. LUDGREN; JOSEPH MASTRANGELO; CHARLES H. MORIN; HERBERT NADLER; ROCHELLE NADLER; FRANK NICHOL; BARBARA NICHOL; ROBERT V. PALAN, individually and as custodian for David Barry; CHARLES POTTER; RACQUEL-DIVISION OF BINDER'S BIG MEN'S STORE; GLADYS RYAN; DONALD J. RESNICK; RACHNALL SCHLAFSTEIN; SYDELLE SCHECHTER; JOHN T. SHEEHY; CARL SCHECHTER; SEIDMAN & SEIDMAN, PC PROFIT SHARING TRUST; JAMES R. SHAPIRO; LEON D. SHELDAHL; IRVING SIROTA; E. THOMAS SPENGLER; HJALMAR J. SUNDIN, as Trustee; FREDERICK K. WATSON, JR.; BEN WONG, JR.; BENJAMIN B. WONG; GRACE C. WONG; VANCE E. VORHEES; LAWRENCE ZUCKER, and any and all additional parties who either have joined or will join the said Committee,

       Defendants - Appellants.

JEFFREY A. WEINMAN, as Trustee for the Integra Unsecured Creditors' Trust,

     Plaintiff - Appellee,

v.

FIDELITY CAPITAL APPRECIATION FUND,

     Defendant - Appellee,

AD HOC PROTECTIVE COMMITTEE FOR SHOW BIZ STOCKHOLDERS; RODNEY J. AXTELL, individually and as custodian for JONATHAN AXTELL; MARY E. AXTELL; KAMAL BARSOUM; EUNICE H. BECK; ROBERT R. BECK; RICHARD H. BECK; ELEANOR S. BECK; MICHAEL BENENSON; KERRI BENESON, as Trustees; JULIUS B. BINDER, as Trustee; BINDERS' BIG MEN'S STORE, INC.; JAMES BOGEAZIS; JOSEPH M. COCQUOYT; DARRELL H. COOPER; ROBERT DOMINE; MAURICE GARDLER; DAVID GARDNER; MARTIN GREENBERG; LEON GREDAHL; PERRY GREEN; ROBERT J. HARRIS; MICHAEL J. HAYES; EDWARD HERZIG; RODNEY WILLIAM KENNOW; FERN LAZAR; MURRAY LAZAR;

No. 99-1416

-3-

KATHRYN L. LUDGREN; JOSEPH MASTRANGELO; CHARLES H. MORIN; HERBERT NADLER; ROCHELLE NADLER; FRANK NICHOL; BARBARA NICHOL; NICOLE NEIMAN; ROBERT V. PALAN, individually and as custodian for David Barry; CHARLES POTTER; RACQUEL-DIVISION OF BINDER'S BIG MEN'S STORE; GLADYS RYAN; DONALD J. RESNICK; ELSIE V. ROSAMEN; SERITA SERVER; RACHNALL SCHLAFSTEIN; SYDELLE SCHECHTER; JOHN T. SHEEHY; CARL SCHECHTER; SEIDMAN & SEIDMAN, PC PROFIT SHARING TRUST; JAMES R. SHAPIRO; LEON D. SHELDAHL; IRVING SIROTA; HJALMAR J. SUNDIN, as Trustee; FREDERICK K. WATSON, JR.; BEN WONG, JR.; BENJAMIN B. WONG; GRACE C. WONG; VANCE E. VORHEES; JEROME YOUNGER; MARCELLA YOUNER; LAWRENCE ZUCKER,

        Defendants - Appellants.

JEFFREY A. WEINMAN, as Trustee for the Integra Unsecured Creditors' Trust,

        Plaintiff - Appellee,              99-1468

v.

FIDELITY CAPITAL

-4-

APPRECIATION FUND,

       Defendant - Appellee,

AD HOC PROTECTIVE
COMMITTEE FOR SHOW BIZ
STOCKHOLDERS; EUGENE SHINE;
and EDWARD C. CAFMEYER,

       Defendants - Appellants.

---

JEFFREY A. WEINMAN, as Trustee
for the Integra Unsecured Creditors'
Trust,

       Plaintiff - Appellee,

v.

JOHN E. ANDERSON; JANE
ANDERSON,

       Defendants - Appellants.

No. 99-1477

---

JEFFREY A. WEINMAN, as Trustee
for the Integra Unsecured Creditors'
Trust,

       Plaintiff - Appellee,

v.

VANGUARD GROUP, INC.,

No. 99-1483

-5-

Defendant - Appellant,

FIDELITY CAPITAL
APPRECIATION FUND,

      Intervenor.

_____

JEFFREY A. WEINMAN, as Trustee
for the Integra Unsecured Creditors'
Trust,

      Plaintiff - Appellee,

v.

RUSSELL HAWLEY; GERALD
BUCKMAN; ROBERT
FRANKIEWICZ; BERNARD
NEUMAN, Custodian for Jordan Abba
Neuman UTMA IL; JORDAN
NEUMAN; JONATHAN NEUMAN;
JAMES S. SAUNORIS; SANDRA R.
SAUNORIS; JAMES S. SAUNORIS
AND WAYNE HUMMER & CO.,
CUSTODIAN FBO JAMES S.
SAUNORIS IRA PLAN; KEITH J.
PEETZ; LOUIS BORY; GRACE
CHARLES, FBO Grace Charles IRA;
MICHAEL J. CONNELLY; RONALD
MANZI; BERNARD PACKER, FBO
Bernard Packer IRA and trustee(s)
thereof; JOSEPH REGAN; KENNETH
J. GREENBERG; SHERRIE
GREENBERG; EDWIN BLAIR
PLYLER; ELLEN PLYLER; JOHN J.
WILK,

No. 99-1498

-6-

Defendants - Appellants,

HARRIET YANG and AUTOMATED
ELECTRONICS CORPORATION,

Defendants,

FIDELITY CAPITAL
APPRECIATION FUND,

Intervenor.

JEFFREY A. WEINMAN, as Trustee
for the Integra Unsecured Creditors'
Trust,

Plaintiff - Appellee,

v.

RALEIGH EMERY; CATHERINE
EMERY; ARNOLD CUTKOMP;
JOELLEN CUTKOMP, also known as
Ellen Cutkomp; MICHAEL
BERGANTINO; MICHAEL
BERGANTINO, TRUSTEE FBO
MICHAEL BERGANTINO IRA;
PEGGIE BERGANTINO; MELVIN
CHUROVICH; RUTH E.
CHUROVICH; G. JAMES
ZYSKOWSKI; MARILYN J.
ZYSKOWSKI; MARILYN J.
ZYSKOWSKI, CUSTODIAN FBO
JULIE ANNE ZYSKOWSKI UGMA
MN,

No. 99-1523

-7-

Defendants - Appellants,

CONCEPT FORMS, INC. PENSION
PLAN 12/21/83, AND TRUSTEE(S)
THEREOF,

Defendants,

FIDELITY CAPITAL
APPRECIATION FUND,

Intervenor.

JEFFREY A. WEINMAN, as Trustee
for the Integra Unsecured Creditors'
Trust,

Plaintiff - Appellee,

v.

MICHAEL FRIEDMAN, MICHAEL
FRIEDMAN as custodian for
JONATHAN FRIEDMAN; HARRIET
FRIEDMAN; AD HOC PROTECTIVE
COMMITTEE FOR SHOW BIZ
STOCKHOLDERS,

Defendants - Appellants.

No. 99-1546

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 94-WM-2581)**

I. Walton Bader, Bader and Bader, White Plains, New York, for the Defendants-Appellants in case numbers 99-1344, 99-1416, 99-1477, 99-1468, and 99-1546.

James S. Dittmar, Hutchins, Wheeler & Dittmar, P.C., Boston, Massachusetts (Tucker K. Trautman, Dorsey & Whitney, Denver, Colorado and Richard R. Lavin, FMR Corp., Boston, Massachusetts, with him on the briefs), for Defendant-Appellee Fidelity Capital Appreciation Fund.

John C. Smiley, Harold G. Morris, Jr., Patrick D. Frye of Lindquist, Vennum & Christensen, P.L.L.P., Denver, Colorado, filed a brief on behalf of the Plaintiff-Appellee Jeffrey A. Weinman.

Jeffrey J. Greenbaum, Sills Cummis Radin Tischman Epstein & Gross, P.A., Newark, N.J. (Steven J. Gorelick, Sills Cummis Radin Tischman Epstein & Gross, P.A., Newark, N.J.; and Chesley K. Culp III and Dianne M. Kueck, Moye, Giles, O'Keefe, Vermeire & Gorrell, LLP, Denver, Colorado, with him on briefs), for Defendants-Appellants in case numbers 99-1483, 99-1498 and 99-1523.

Before **EBEL** and **ANDERSON,** Circuit Judges, and **BRORBY**, Senior Circuit Judge.

**EBEL**, Circuit Judge.

The defendant class action giving rise to the multiple appeals addressed in this opinion was filed under the federal Bankruptcy Code, 11 U.S.C. §§ 105, 544, 550, 1123 and 1145, to recover the value of assets of a bankrupt corporation which were spun off to shareholders prior to the bankruptcy. The events giving rise to the action began in 1988, when Integra Realty Resources, Inc. ("Integra"), a hotel and restaurant company, spun off its restaurant business to its shareholders

to form ShowBiz Pizza Time, Inc. ("ShowBiz"), a separate corporation. At the time, Integra was experiencing significant business losses, and it declared bankruptcy in 1992. In 1994, Integra's unsecured creditors filed suit against all shareholders who received ShowBiz stock to recover the value of the shares for Integra's estate.

The case was initially assigned to a bankruptcy court, which certified the suit as a mandatory defendant class action pursuant to Rule 23(b)(1) and designated seven representative defendants, including Fidelity Capital Appreciation Fund ("Fidelity"),[1] Integra's largest shareholder at the time of the spinoff, to act on behalf of the class defendants. In addition, the court appointed Fidelity's counsel to act as sole counsel for the class in spite of objections that Fidelity itself raised to serving as a class representative. Following the certification of the class, the district court withdrew its reference of the case to the bankruptcy court except for pretrial procedures. Fidelity filed an unsuccessful motion to dismiss the suit, and then negotiated a settlement allowing individual defendant shareholders either (1) to accept the agreement and pay damages; (2) to accept the agreement and raise a limited number of individual defenses; or (3) to opt out of the settlement and continue litigating the case before the district court.

---

[1]Fidelity has intervened in each of the appeals consolidated in this opinion in order to argue in favor of the adequacy of its representation of the class.

The district court approved the settlement agreement, and the vast majority of class defendants either accepted the settlement or entered into individual settlement agreements with the unsecured creditors.

Following entry of final judgment implementing the settlement by the district court, several appeals were nonetheless filed challenging the court's approval of the settlement agreement and numerous underlying orders. Eight separate appeals were consolidated into two appeals for the purposes of briefing and oral argument under Rule 3(b)(2) of the Federal Rules of Appellate Procedure. These two appeals have been further consolidated for disposition within this opinion.[2] Appellants challenge, inter alia, the propriety of certifying the suit to a bankruptcy judge for pretrial proceedings, the bankruptcy court's decision to certify a class under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure, and Fidelity's adequacy as a class representative. For reasons stated herein, we DISMISS each of the appeals for lack of standing.

## I. BACKGROUND

A.    Integra/ShowBiz Spinoff

---

[2]In the interest of simplicity, we will refer to all defendant class members bringing appeals herein collectively as "the Appellants," and we will refer to specific case numbers where necessary to distinguish individual arguments and case dispositions.

This appeal arises from Integra's December 1988 spinoff of ShowBiz Pizza Time, Inc. to its shareholders. Integra, which owned a ninety-percent stake in ShowBiz, issued shareholders a dividend of 0.429 ShowBiz shares for each share of Integra owned by the recipient. At the time of the spinoff, Integra was controlled by the Hallwood Group Inc. ("Hallwood"), a merchant banking firm that owned fourteen percent of Integra's common stock and which appointed a majority of Integra's directors. See In re Integra Realty Resources, Inc., 198 B.R. 352, 354 (Bankr. D. Colo. 1996).

ShowBiz began trading as a separate public corporation in January 1989 at a price of $5.50 per share, traded for at least $5 per share throughout the relevant period, and, adjusting for stock splits, eventually traded for as much as $53.75 per share. Integra, on the other hand, consistently traded below $2 per share, continually lost money after the spinoff, and filed for Chapter 11 bankruptcy in the District of Colorado in 1992. In 1994, the bankruptcy court approved both Integra's Chapter 11 plan of reorganization ("Reorganization Plan") and the formation of a trust to act on behalf of unsecured creditors ("the Trust"). Pursuant to the Reorganization Plan, the bankruptcy court assigned to the trust a variety of potential claims that Integra had against Hallwood and its former officers and directors, and Hallwood and the former directors paid $9 million to settle these claims. In 1994, the bankruptcy court released the settling parties

from further liability for Integra's claims, which are defined as follows: "[A]ll Core Claims and Claims . . . which Integra and the Bankruptcy Estate ever had or now has or may have at the Effective Date, including without limitations Claims held in Integra's corporate capacity and Claims arising in or under Chapter 5 of the Bankruptcy Code."[3]

B.    Trustees' Suit for Fraudulent Transfer or Unlawful Dividend

Plaintiff Jeffrey A. Weinman ("Trustee") filed the present suit in 1994, in his capacity as Trustee for the unsecured creditors' Trust, seeking to recover the value of the ShowBiz shares for Integra's estate in bankruptcy. The defendants were all beneficial recipients of ShowBiz shares following the 1988 spinoff. The

---

[3]The parties dispute whether the Hallwood Settlement affected Appellants in the case at hand. Some of the Appellants (those appearing in case numbers 99-1433, 99-1416, 99-1468, 99-1477, and 99-1546) allege that an injunction entered pursuant to the Hallwood Settlement prejudiced their ability to seek indemnification for damages in the case at bar from the Hallwood Group. Following oral arguments, these Appellants filed a supplemental motion with the court to vacate this portion of the Hallwood Settlement or to dismiss the complaint in the present case in light of that injunction.

Many of the Appellants raising this argument apparently opted out of the class action settlement in this case and continued litigating their defenses before the district court. As is discussed below, Appellants who opted out of the settlement lack standing to participate in the appeal presently before the court. The remaining Appellants did not raise this issue before the district court, and accordingly the district court has not passed on the meaning of the settlement in the first instance. Therefore, it is not properly before the court at this time and we do not consider it in this opinion. Cf. Walker v. Mather, 959 F.2d 894, 896 (10th Cir. 1992) (in general, court will not consider issues on appeal that were not raised before the district court).

Trustee asserted a variety of claims, alleging that the spinoff constituted a fraudulent transfer pursuant to the Texas Fraudulent Transfer Act, Texas Bus. & Com. Code Ann. §§ 24.001-.012, and in addition sought relief pursuant to several provisions of the United States Bankruptcy Code, 11 U.S.C. §§ 105, 544, 550, 1123, and 1145. The Trustee attempted service of the complaint on more than 800 known defendants by first-class mail, and he then filed a motion to have the action certified as a defendant class action. After conducting a hearing to consider objections from putative class members, the bankruptcy court certified a defendant class of ShowBiz stock recipients under Rule 23(b)(1).

In addition, the bankruptcy court designated seven representative defendants. These representatives consisted of Fidelity, three other institutional investors, two individual investors, and the Unofficial Protective Committee of ShowBiz Stockholders ("Unofficial Committee"),[4] which is made up of clients represented by attorney I. Walton Bader ("Bader"). The Unofficial Committee appears in the caption in appeals numbered 99-1344, 99-1416, 99-1468, and 99-

---

[4]On appeal, the Unofficial Committee has styled itself "The Ad Hoc Protective Committee for ShowBiz Stockholders." This name apparently refers to substantially the same aggregation of members of the defendant class members as the Unofficial Committee. The precise membership of the Unofficial Committee is not defined in the briefs or in the record, but for the purposes of this appeal we accept attorney Bader's description in the captions to case number 99-1344.

1546.[5]  Although not listed elsewhere in the record, Bader alleges that the Appellants in case number 99-1344 are members of the committee.  The same individuals appear in case number 99-1416.

The bankruptcy court then ordered the class representatives to meet, discuss the appointment of class counsel, and report their selection back to the court.  Further, the court designated procedures for notifying defendants of the action, and approved a form of notice which was mailed in June 1995.

---

[5]The Trustee does not challenge the status of the Unofficial Committee or its members to act as representative parties on behalf of the class.  However, because we must satisfy ourselves that we have jurisdiction, we examine the issue sua sponte. See Quest Communications Int'l v. FCC, 240 F.3d 886, 891 (10th Cir. 2001).  The Unofficial Committee itself was not a member of the class. Thus, it is clear that the Unofficial Committee cannot act as a representative party on behalf of the unnamed class members.  See Fed. R. Civ. P. 23(a) (stating that "[o]ne or more members of a class may sue or be sued as representative parties" (emphasis added)).  It is not alleged that the Unofficial Committee could demonstrate associational standing.  Cf. United Food Workers v. Brown Group, 517 U.S. 544, 553 (1996), and thus we do not consider that possibility. However, we do observe that it does not appear that the Unofficial Committee could satisfy the third prong required to show associational standing (that neither the claim asserted nor the relief requested requires the participation in the lawsuit of the individual members) in any event.  Cf. id. at 554 (noting in dicta that "precedents have been understood to preclude associational standing when an organization seeks damages on behalf of its members").  Moreover, the individual members of the Unofficial Committee, whom the bankruptcy court never identified and failed individually to certify as adequate representatives, cannot properly claim status as representative parties in this case.  Thus, neither the Unofficial Committee nor its individual members can be considered named parties.

The class representatives were unable to agree on who should serve as class counsel. Fidelity was the largest recipient of ShowBiz shares in the spinoff, receiving 377,520 shares of ShowBiz stock, or approximately ten percent of the total. Fidelity had initially requested to be excluded from serving as a representative party out of concern that its duties to shareholders might conflict with its responsibilities to the class members. In addition, Fidelity informed the court that its exposure differed significantly from that of many of the other class members, both because of the large number of shares it received and because it sold its ShowBiz stock at the relatively high average price of $37.65 per share. Nevertheless, the three remaining institutional investors ultimately nominated Fidelity to act as the sole class representative to appear on behalf of the class.[6] Although Fidelity had opposed designation of the class, it told the court it would vigorously protect its own interests, and that by doing so it believed it would protect interests it had in common with other class members. However, Fidelity disclaimed any acceptance of fiduciary duties to the members of the class.

The Unofficial Committee proposed that a committee of attorneys representing different groups of defendants appear on behalf of the class. Fidelity objected to this arrangement, arguing it would be impossible for it to work

---

[6]Fidelity itself characterizes its appointment as "involuntary." It may be more accurate to say Fidelity acquiesced to this role without specifically seeking it.

effectively with Bader and submitting seven reported cases detailing what it believed to be questionable or unethical conduct by Bader. Fidelity stated that it had no objections to sharing defense time so that Bader could appear before the court on behalf of the Unofficial Committee, however.

Ultimately, the bankruptcy court rejected the proposal for a committee of class counsel. Bader then petitioned the court for the Unofficial Committee members to be relieved from their status as representative defendants and to proceed exclusively and independently under Bader's representation, and the court rejected this request as well. The court also denied Bader leave to file an interlocutory appeal of his request to proceed independently from the class.[7] Following Fidelity's designation as lead counsel, the district court withdrew the suit from the bankruptcy court. The case was nevertheless remanded to the bankruptcy court for pretrial matters.

Fidelity began its defense of the class by filing a preliminary dispositive motion raising the statute of limitations and other threshold defenses. See In re

---

[7]Members of the Unofficial Committee have objected to the court's designation of Fidelity's counsel as class counsel, asserting that they had an absolute right to have Bader participate fully in the litigation pursuant to the Due Process Clause of the Fifth Amendment and Rule 23(c) of the Federal Rules of Civil Procedure. We reject this argument because Bader was allowed a full opportunity to represent his clients in the motions below and on appeal, and these members opted out of the settlement and thus cannot show injury in fact sufficient to establish standing. See our discussion at III.A.1, infra.

Integra, 198 B.R. at 353. The bankruptcy court denied the motion as well as a subsequent motion for leave to appeal. See id. at 365. Fidelity then entered into settlement negotiations. The parties eventually submitted a proposed settlement to the court that would have held each class member liable for the lesser of either: (1) $7.00 per share; or (2) the amount the class member received when and if they sold the stock. The proposed settlement also established procedures for class members to raise a limited number of individual defenses and to litigate issues which were not common to class members.

The district court approved a form notifying class members of the settlement's provisions and instructing them how to file objections. The vast majority of defendants filed no objections. Many of those that did were concerned by the absence of a right to opt out of the settlement. After additional negotiation with Fidelity, the Trustee consented to modify the agreement to provide for such rights. The district court did not order that class members be notified of this new provision prior to approving the settlement, however.

The district court conducted a fairness hearing pursuant to Fed. R. Civ. P. 23(e) in March 1998, and Bader appeared on behalf of his clients and objected that the settlement was excessive and unfair. The remaining Appellants in this case apparently did not appear to object to the settlement or otherwise seek to intervene in the action to protect their rights. Despite Bader's objections, the

district court approved the settlement agreement, and entered individual judgments against those class members who neither opted out of the settlement nor raised individual defenses. The district court also entered a minute order stating that Fidelity could take immediate possession of any settlement funds paid by settling defendants.[8]

C.      Description of Appeals

Because of the intricate rules governing standing to appeal from a class action settlement, it is necessary to discuss each of the individual cases in some detail before beginning our analysis of the case.

1.      *Case numbers 99-1344, 99-1416, 99-1468, and 99-1456*

The Trustee alleges that all of the appellants in cases numbered 99-1344 and 99-1416 opted out of the settlement and have pressed forward with their defenses before the district court. Case numbers 99-1344 and 99-1416 were brought by the Unofficial Committee and a number of individual defendants represented by attorney Bader whom the Unofficial Committee claims as members. The Trustee filed a motion with this court to dismiss 99-1416, arguing

---

[8]The Unofficial Committee argues that this minute order gives standing to appeal to class members who opted out of the settlement and who thus remain parties to litigation before the district court. The parties do not cite and we could not locate a copy of the order in the appendices. In any case, even assuming the accuracy of Bader's characterization of this order, we hold below, infra at III.A.1, that it is insufficient to create standing to appeal the settlement for those who opted out of its provisions.

that the appellants in that case had opted out of the settlement and thus lacked standing to bring an appeal objecting to the settlement. The trustee also asserts that no final judgment existed as to those appellants. The Trustee repeated these arguments in its answer brief to the court with respect to case number 99-1344.

A few of the individual litigants involved in these cases have clearly opted out of the settlement.[9] The record is less clear with respect to the majority of those whom Bader claims as members of the Unofficial Committee. Bader filed notice of appeal to the settlement on September 15, 1999. Rodney J. Axtell, a member of the Unofficial Committee, and fifty-seven other Appellants, filed a motion the following day purporting to "exclude" themselves from the class and objecting to the requirement that they opt-out because of the pendency of their appeal. The record, however, does not show whether the remaining members of the Unofficial Committee formally opted out or whether judgments were entered against them pursuant to the settlement. The Unofficial Committee is listed as a party in case number 99-1546. Our analysis of the Unofficial Committee members' standing thus extends to these cases as well.

     2.     *Case numbers 99-1477, 99-1546, 99-1483, 99-1498, and 99-1523*

---

[9]The district court docket in this case establishes that Jonathan Axtell, Mary E. Axtell Binder's Big Men's Store, Inc., Rodney William Kennow, Richard O. Jacobson and Hjalmar J. Sundin opted out of the settlement. Each is listed as an appellant in the case numbers set forth above.

Case numbers 99-1468, 99-1477 and 99-1546 also include appeals by individual Appellants represented by Bader. Although these appeals were consolidated with the appeals by the Unofficial Committee, there is no allegation that these individuals are members of the Committee themselves, and therefore we do not treat them as such.[10]

The remaining appeals are brought by Vanguard Group, Inc. and a number of individual recipients of ShowBiz stock. All of these Appellants appear as unnamed[11] class members who accepted the settlement and had judgments entered against them by the district court according to its terms.[12]

---

[10]The individual Appellants in case number 99-1468 are Eugene Shine and Edward C. Cafmeyer. Although the amount of the judgments entered against Shine and Cafmeyer does not appear in the record, the District Court Docket shows that both Shine and Cafmeyer had judgments entered against them pursuant to the Settlement Agreement. Appellants in case number 99-1477, John E. Anderson and Jane Anderson, sustained judgments of $504 and $91, respectively, on Sept. 29, 1999, and they filed notice of appeal of the judgment on October 18, 1999. Appellants in case number 99-1546, Harriet Friedman and Michael Friedman, both in his individual capacity and in his capacity as trustee for Jonathan Friedman, sustained judgments totaling $574 on November 8, 1999. They appealed their judgments on November 26, 1999.

[11]Following common terminology, we refer to representative parties as "named parties," and to all other members of the defendant class as "unnamed parties."

[12]Vanguard Group, Inc., the Appellant in case number 99-1483, sustained a judgment of $73,192 under the settlement on September 23, 1999, and filed notice of appeal on October 25, 1999. The Appellants in case number 99-1498 consist mostly of individual investors and custodians of Individual Retirement

(continued...)

## II. DISCUSSION

A.  Jurisdiction and Standing

The district court exercised jurisdiction pursuant to 28 U.S.C. § 1334(b).

We have statutory authority to review final decisions in bankruptcy matters

pursuant to 28 U.S.C. § 158(d) and 28 U.S.C. § 1291.  The trustee has challenged

the timeliness of the notices of appeals filed by Appellants, which we address

below.

Before we can reach this issue, however, we must first determine whether a

live case or controversy exists upon which we can constitutionally exercise

judicial authority.  See U.S. Const. art III § 2; Schaffer v. Clinton, 240 F.3d 878,

882 (10th Cir. 2001) ("The judicial power of federal courts extends only to actual

cases and controversies.").  As was discussed above, it appears from the docket

that some of the appellants in the appeals numbered 99-1344 and 99-1416 opted

out of the settlement and have continued to litigate their cases before the district

court, and that the status of the remaining parties is unclear from the record.

---

[12](...continued)
Accounts.  All of these class members sustained individual judgments against
them under the settlement between September 29, 1999 and October 13, 1999.
The parties collectively filed notice of appeal on October 29, 1999.  The
appellants in case number 99-1523 also consist of individual investors and
trustees for IRA accounts, who sustained judgments during the same time period,
and who filed notice of appeal on November 12, 1999.

The Trustee's assertion that the members of the Unofficial Committee opted out of the settlement and are now litigating their cases before the district court raises troubling questions concerning the standing of those parties to bring this appeal. It is well settled that, in order to show standing necessary to invoke federal court jurisdiction, a party must demonstrate three things:

> (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court"; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative."

Northeastern Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 663-64 (1993) (citations omitted). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)). "The party invoking federal jurisdiction bears the burden of establishing th[is] element[]." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

     1.    *Standing of the Opt-out Appellants*

The Trustee asserts that all of the Appellants in case numbers 99-1344 and 99-1416 – that is, the members of the Unofficial Committee – opted out of the settlement. Thus, the Trustee argues that they lack standing to bring the present appeal. Although not expressly stated in the briefs, we interpret the Trustee's argument to be that these appellants lack any legally protected interest that could support the "injury in fact" element necessary to demonstrate standing. The Unofficial Committee members do not challenge the Trustee's assertion that they opted out, and therefore we treat that assertion as true. Cf. Lujan, 504 U.S. at 561 (holding that the party invoking federal jurisdiction has the burden of proof with respect to standing); FW/PBS, Inc., 493 U.S. at 231 (same). Rather, Appellants contend they can establish injury in fact because after the district court approved the settlement, it entered a minute order allowing payments made pursuant to the settlement to be immediately disbursed to the Trustee. Specifically, Appellants contend that this order enables the Trustee to generate a war chest of funds which will inevitably make it more difficult for the opt-out appellants to defend their cases.

However, this contention does not constitute a legally protected interest in the settlement. "[N]on-settling defendants generally have no standing to complain about a settlement, since they are not members of the settling class." Transamerican Refining Corp. v. Dravo Corp., 952 F.2d 898, 900 (5th Cir. 1992);

- 24 -

see also In re Beef Indus. Antitrust Litig., 607 F.2d 167, 172 (5th Cir. 1979);

Darrow v. Southdown, Inc., 574 F.2d 1333, 1336 n.3 (5th Cir. 1978)); In re

Vitamins Antitrust Class Actions, 215 F.3d 26, 29 (D.C. Cir. 2000); Mayfield v.

Barr, 985 F.2d 1090, 1092-93 (D.C. Cir. 1993). "This rule advances the policy of

encouraging the voluntary settlement of lawsuits." Waller v. Fin. Corp., 828 F.2d

579, 583 (9th Cir. 1987). Thus, "[w]hen the partial settlement reflects settlement

by some defendants, appeals by nonsettling defendants have been dismissed, on

grounds that mingle concerns of standing with finality concerns." 15B Charles

Alan Wright et al., Federal Practice & Procedure § 3914.19 (2d ed. 1991 & 2001

Supp.) (footnote omitted).

Courts have recognized a limited exception to this rule where nonsettling

parties can demonstrate they are "prejudiced" by a settlement. See Mayfield, 985

F.2d at 1093, Agretti v. ANR Freight Sys., 982 F.2d 242, 246 (7th Cir. 1992); In

re Sch. Asbestos Litig., 921 F.2d 1330, 1332 (3d Cir. 1990). However, it is not

sufficient for Appellants to show merely the loss of some practical or strategic

advantage in litigating their case. See Mayfield, 985 F.2d at 1093. "'[P]rejudice'

in this context means 'plain legal prejudice,' as when 'the settlement strips the

party of a legal claim or cause of action.'" Id. (quoting Agretti, 982 F.2d at 247);

accord, e.g., Eichenholtz v. Brennan, 52 F.3d 478, 482-83 (3d Cir. 1995); Zupnick

v. Fogel, 989 F.2d 93, 98 (2d Cir. 1993); Alumax Mill Prods. v. Congress Fin.

- 25 -

Corp., 912 F.2d 996, 1001-02 (8th Cir. 1990); Waller, 828 F.2d at 583; In re Beef

Indus. Litig., 607 F.2d at 172.

As the Seventh Circuit has explained,

Plain legal prejudice [sufficient to confer standing upon a non-settling litigant in a class action] has been found to include any interference with a party's contract rights or a party's ability to seek contribution or indemnification.  A party also suffers plain legal prejudice if the settlement strips the party of a legal claim or cause of action, such as a cross-claim or the right to present relevant evidence at trial.
     On the other hand, courts have repeatedly held that a settlement which does not prevent the later assertion of a non-settling party's claims, although it may force a second lawsuit against the dismissed parties, does not cause plain legal prejudice to the non-settling party.  Mere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice.

Agretti, 982 F.2d at 247 (citations omitted, emphasis added); see also  Herbert B.

Newberg & Alba Conte, 2 Newberg on Class Actions § 11.55 (3d ed. 1992)

("[N]onsettling defendants in a multiple defendant litigation context have no

standing to object to the fairness or adequacy of a settlement by other defendants,

but they may object to any terms that preclude them from seeking indemnification

from the settling defendants.  Nonsettling defendants also have standing to object

if they can show some formal legal prejudice to them, apart from the loss of

contribution or indemnity rights.").

At most, the Appellants who opted out of the settlement have alleged the

court's minute order allowing for immediate recovery of settlement funds has

placed them at a tactical disadvantage. As such, they have not alleged legal prejudice. We therefore hold that Appellants who opted out of the settlement lack standing to appeal.

2. *Standing of the Class Members Who Have Had Final Orders Entered Against Them Pursuant to the Settlement Agreement, But Who Were Not Themselves Class Representatives or Intervenors.*

Although the remaining Appellants all accepted the settlement and had judgments entered against them pursuant to its terms, the Trustee nonetheless argues that we should dismiss their appeals for lack of standing as well. Specifically, the Trustee contends that these Appellants lack standing because they were not representative (named) parties and they did not move to intervene in the class action. The Trustee's argument includes all those Appellants who have appealed in cases numbered 99-1483, 99-1498, 99-1523 and 99-1477, as well as the individually named appellants in case numbered 99-1546 and 99-1468, who are not claimed as members of the Unofficial Committee.

While some conflict exists among the federal courts of appeals concerning whether an unnamed class member has standing to appeal a judgment entered pursuant to a settlement of a class action, the rule in the Tenth Circuit was settled by Gottlieb v. Wiles, 11 F.3d 1004, 1009 (10th Cir. 1993). "[F]ormal intervention is a prerequisite to an unnamed class member's standing to appeal, at least in the absence of any violations of the Rule 23 procedures intended to protect the rights

of those unnamed class members." Id.; see also In re Brand Name Prescription Drugs Antitrust Litig., 115 F.3d 456, 457 (7th Cir. 1997) (holding that unnamed class members in a plaintiff class action may not appeal entry of summary judgment for defendants, and expressly rejecting prior authority in light of Marino v. Ortiz, 484 U.S. 301, 304 (1988) (per curiam)[13]); Shults v. Champion Int'l Corp., 35 F.3d 1056, 1061 (6th Cir. 1994) (holding that unnamed class members have standing to appeal a settlement order only if they have formally intervened in the action or if a district court erroneously denied a motion to intervene in the action); Croyden Assocs. v. Alleco, Inc., 969 F.2d 675, 680 (8th Cir. 1992) (dismissing appeal of settlement by unnamed members of a plaintiff class who failed formally to intervene in the action); Walker v. City of Mesquite, 858 F.2d

---

[13]Marino held that a group of white New York City police officers who claimed they were adversely affected by a settlement to a Title VII class action to which they were not parties, and in which they did not intervene, lacked standing to appeal the settlement.  The Supreme Court reasoned:

> The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment is well settled.  The Court of Appeals suggested that there may be exceptions to this general rule, primarily 'when the nonparty has an interest that is affected by the trial court's judgment.'  We think the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable.

Id. at 304 (citations omitted).

Although we did not specifically rely on Marino in Gottlieb, two of the cases that we cited as persuasive authority did.  See Croyden Assocs. v. Alleco, Inc., 969 F.2d 675, 679 (8th Cir. 1992); Walker v. City of Mesquite, 858 F.2d 1071, 1074 (5th Cir. 1988).

1071, 1074 (5th Cir. 1988) ("[W]e conclude that the better practice in the instant case is for nonnamed class members to file a motion to intervene and then, upon the denial of that motion, appeal to this Court."); Guthrie v. Evans, 815 F.2d 626, 627 (11th Cir. 1987) (class member who was not named representative plaintiff in class action lacked standing to appeal a settlement of that action). But see Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1309 (3d Cir. 1993) (member of a plaintiff class who attended hearing to determine the fairness and adequacy of a class action settlement and voice their concerns before the district court had standing to appeal the settlement).

In Gottlieb, we recognized three policy grounds in favor of our rule requiring intervention as a prerequisite for unnamed class members to appeal. First, we noted that unnamed class members cannot act in a representative capacity pursuant to Rule 23(a) absent an affirmative finding by the district court that their claims are typical of those of the class as a whole and that they will fairly and adequately represent the interests of the class members. See 11 F.3d at 1008.

> Permitting unnamed class members to pursue an appeal contrary to the wishes of the named class representatives would effectively substitute the unnamed members for the certified class representatives. Such a rule would undermine class action suits by allowing any and all unnamed class members to relitigate the suit without any indication that the named plaintiffs were improperly certified.

Id.;[14] see also Guthrie, 815 F.2d at 628 (unnamed, individual class members "cannot represent a class in federal litigation until the district court makes certain findings, including that they will fairly and adequately protect the interests of the class"); Croyden Assoc., 969 F.2d at 678 (citing Guthrie with approval); Walker, 858 F.2d at 1073 (same).

Second, it is not necessary to allow unnamed class members who did not intervene the right to appeal in order to protect their rights to due process either during the course of litigation or to a fair and adequate judgment at the end of the process. See 11 F.3d at 1008-09. In Gottlieb, we noted that Rule 23 itself contemplates that aggrieved class members can move to intervene under Rule 24(a) of the Federal Rules of Civil Procedure, and that the denial of a motion to intervene is appealable. Id. ("Intervention to protect the rights of unnamed class members was explicitly contemplated by the Advisory Committee in adopting Rule 24." (citing Notes of Advisory Committee on Rules to the 1966 Amendment

[14]In this case, Appellants in case numbers 99-1483, 99-1498, and 99-1523 asserted without explanation at oral arguments that they are "named" parties. We infer, however, that Appellants are referring to the fact that they were named individually among the more than 800 defendants in the amended complaint that gave rise to this litigation. Given Gottlieb's emphasis on the distinction between representative versus represented parties, it would appear the court's real concern was the due process implication of allowing appeal by parties who have not been certified to be adequate. See 11 F.3d at 1008. Despite having been named in the complaint, Appellants nonetheless appear now as unnamed class members, because the district court certified the case as a class action and designated representative defendants who did not include these Appellants.

to Fed R. Civ. P. 24, 28 U.S.C. App. at 607 (1988))). Intervention by an unnamed class member is appropriate even after the approval of a settlement or entry of judgment where it appears that a heretofore adequate representative abandons the unnamed class members in favor of its own self-interests. See United Airlines v. McDonald, 432 U.S. 385, 394 (1977); Baker v. Wade, 769 F.2d 289, 292 (5th Cir. 1985).

Third, we reasoned that:

Rule 23 class actions were designed to unify and render manageable litigation involving numerous members of a homogenous class who would otherwise each have access to the courts through individual lawsuits. If individual appeals without formal intervention were to be permitted, the class action would break down under the burden of unpredictable and unlimited individual actions. Such a result would directly conflict with the goals of Rule 23 and would eviscerate the utility of the class action suit.

Gottlieb, 11 F.3d at 1009; see also In re Brand Name Prescription Drugs, 115 F.3d at 457 ("[T]o allow [unnamed class members] to appeal would be an even worse affront to intelligent judicial administration because it would fragment control of the class action."); Walker, 858 F.2d at 1074-75; Guthrie, 815 F.2d at 629.

Appellants argue, without citation to any authority, that the cases cited above are inapplicable in the context of defendant class actions. It is true that Gottlieb involved a plaintiff class action, as did most of the authorities cited

above.  Moreover, we agree with the appellants that defendant class actions create a special need to be attentive to the due process rights of absent parties.

> [T]here is a significant difference in liability and monetary exposure between a plaintiff and a defendant class when an unfavorable class judgment is involved.  Moreover, an unwilling representative for a defendant class (which is the usual situation), creates a potential question concerning whether this involuntary representative will vigorously defend the lawsuit on behalf of the class.  These circumstances also create a spillover need to examine carefully satisfaction of typicality, common questions, and notice requirements.  There is little doubt that a defendant class requires closer scrutiny of Rule 23 tests to assure fairness to absent members based on long-standing due process protections. . . .  As a result, due process considerations put greater limits on the use of defendant classes than plaintiff classes.

1 Newberg on Class Actions, supra, § 4.47.

Nevertheless, it does not follow that there is a due process right for unnamed defendant class members to appeal a settlement in situations in which an unnamed plaintiff class member would lack standing.  First, our rule in Gottlieb allows for a review of precisely the due process protections discussed above.  Second, none of the cases above hinted at any distinction between the standing requirements for members of plaintiff classes and defendant classes.  To the contrary, the Seventh Circuit initially set forth relatively lenient standards for appeal in the context of a defendant class action, and then explicitly overturned them in favor of a rule similar to our own in a case involving a plaintiff class action.  Compare Research Corp. v. Asgrow Seed Co., 425 F.2d 1059, 1060 (7th

- 32 -

Cir. 1970) (stating in dicta that members of mandatory defendant class would have had standing to appeal a class settlement if they had objected to the terms of the agreement during a hearing before the district court, even without formal intervention), with Felzen v. Andreas, 134 F.3d 873, 875 (7th Cir. 1998) (dismissing appeals of unnamed members of plaintiff class and "formally overrul[ing] Asgrow Seed and any other case in this circuit . . . that permits non-parties to appeal from a decision of any kind in a class action"), aff'd sub nom. Calif. Pub. Employees' Ret. Sys. v. Felzen, 525 U.S. 315 (1999) (per curiam by equally divided Court). The court placed no weight on the adversarial postures of the class members in doing so, and thus it would appear the Seventh Circuit requires intervention by members of plaintiff and defendant class actions alike.

Furthermore, a rule allowing for direct appeal by unnamed class members from a class settlement without intervention is unnecessary. Gottlieb itself sets forth a clear rule in favor of intervention that is easy both for courts and litigants to apply, and aggrieved unnamed class members have several additional options available to help them to protect their rights up to and even after the district court's approval of the settlement. For example, class members can petition the district court to designate a subclass of litigants with a separate representative party. See Fed. R. Civ. P. 23(c)(4) ("When appropriate . . . a class may be divided into subclasses and each subclass treated as a class, and the provisions of

this rule shall then be construed and applied accordingly."); In Re Brand Name Prescription Drugs, 115 F.3d at 457-58 (same). Furthermore, aggrieved class members can file a collateral suit before the district court challenging the adequacy of representation, notice, and other due process protections which, if successful, renders the judgment void as to those unnamed class members. See In re Four Seasons Sec. Laws Litig., 502 F.2d 834, 840, 842 (10th Cir. 1974); Shults, 35 F.3d at 1058-59; Walker, 858 F.2d at 1074; Guthrie, 815 F.2d at 628.

In addition, as we noted in Gottlieb, in class actions brought under Rule 23(b)(3), class members have an absolute right to opt out of the class. Although this class was certified pursuant to Rule 23(b)(1), which does not automatically carry opt-out rights, the settlement itself entitled any party to opt out and to be treated as an individual litigant in ongoing proceedings before the district court. Thus, to the extent that the appellants here object to the terms of the settlement, class certification, or the adequacy of Fidelity's representation, they could have achieved precisely the relief they now seek simply by taking advantage of the opt-out provision provided within its terms.

We are cognizant of the fact that, in some cases, "the option to join [or opt-out of a class action] is in reality no option at all," Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 33 (3d Cir. 1971), because the amounts at stake in the action could be far outweighed by the costs of litigation. This is a legitimate

concern, and one that might well force absent class members to make hard choices weighing the cost of litigation against the risk of an adverse judgment. Such choices, however, are an inescapable feature of our adversarial system in general and the intervention requirement of Gottlieb in particular. However, in some respects this practical concern works to the defendants' advantage because the plaintiff may decide it is not economically worthwhile to pursue small claims against individual defendants.

In sum, this is not a case in which Appellants lack a mechanism that would have enabled them to protect their due process rights. To the contrary, this is a case in which Appellants failed to take the procedural steps necessary to allow them to do so.

This holding does not dispose of all of the issues in the case, however. Our opinion in Gottlieb contained an important qualification that even unnamed class members may be entitled to a narrow appeal asserting they were denied the due process afforded by procedural provisions offered by Rule 23. See 11 F.3d at 1009. Thus, we must still consider whether Fidelity provided adequate representation for the class members, and whether notice afforded to the appellants was adequate to satisfy the dictates of the Due Process Clause. See id. (citing Silber v. Mabon, 957 F.2d 697, 700 (9th Cir. 1992) (unnamed class members could appeal adequacy of notice); Sertic v. Carpenters Dist. Council,

459 F.2d 579, 581 (6th Cir. 1972) (unnamed class members could appeal adequacy of notice and opportunity to object to proposed class settlement); Phila. Hous. Auth. v. Am. Radiator & Standard Sanitary Corp., 322 F. Supp. 834, aff'd sub nom. Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30 (3d Cir. 1971) (unnamed class members could appeal adequacy of representation and opportunities to object to settlement in class action)).

### 3. *Timeliness of appeals*

Before reaching the merits of these questions, however, we must consider the Trustee's assertion that none of the appeals in this case are timely. The district court certified its settlement approval order as final for purposes of appeal on July 7, 1999. See Fed. R. Civ. P. 54(b).[15] Because Rule 4(a) of the Federal Rules of Appellate Procedure requires a notice of appeal to be filed within thirty

---

[15]Rule 54(b) states, in relevant part:
When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

- 36 -

days after a final judgment, the Trustee contends the time to appeal the settlement would have run on August 6, 1999. The Trustee therefore challenges the timeliness of all appeals that were filed after that date, including the appeals numbered 99-1468, 99-1477, 99-1546, 99-1483, 99-1498, and 99-1523.

The Trustee is correct that a district court's proper certification of an order under Rule 54(b) ordinarily starts the clock running for purposes of filing notice of appeal. See England v. Hendricks, 880 F.2d 281, 284-85 (10th Cir. 1989). This observation does not end our inquiry, however. "Despite its apparently broad scope, Rule 54(b) may be invoked only in a relatively select group of cases and applied to an even more limited category of decisions." 10 Charles Alan Wright et al., Federal Practice & Procedure § 2656 (3d ed. 1998). An essential prerequisite for invoking Rule 54(b) "is that at least one claim or the rights and liabilities of at least one party must be finally decided." Id.; see also, e.g., Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980); Armijo v. Atchison, Topeka & Santa Fe Ry. Co., 19 F.3d 547, 552 (10th Cir. 1994); Wheeler Mach. Co. v. Mountain States Mineral Enter., 696 F.2d 787, 789 (10th Cir. 1983). "Finality is judged by the standards applicable to determining jurisdiction under 28 U.S.C. § 1291 . . . . 'The District Court cannot, in the exercise of its discretion, treat as "final" that which is not "final" within the meaning of . . . § 1291.'" Id. (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437 (1956)

(emphasis in original)).  We review the certification of an order under Rule 54(b) for purposes of appeal for abuse of discretion.  See United Bank v. Hartford Accident & Indem. Co., 529 F.2d 490, 492 (10th Cir. 1976).

In this case, the district court's certification of its settlement approval order as a final judgment constituted an abuse of discretion.  The district court's order decided only that the agreement reached between Fidelity and the Trustee was fair and that it could be submitted to the class members for them to accept or reject.  By its expressed terms, class members had until September 15, 1998 to either: (1) accept the agreement and pay the Trustee according to its terms; (2) accept it and raise a limited number of individual defenses; or (3) opt out of the settlement entirely and litigate the case individually before the district court.  It is true that the settlement would for all practical purposes completely resolve the case for those class members who chose to accept the agreement and pay the Trustee pursuant to its terms.  However, the August 6 deadline for filing an appeal suggested by the Trustee would have required even those class members to file their notice of appeal more than a month before the September 15, 1998, deadline for deciding whether to accept the settlement terms or to opt out.

Accordingly, we find the district court's approval of the settlement agreement was not a final order, and that the district court's attempt to certify its order for appeal pursuant to Rule 54(b) was an abuse of discretion.  We measure

- 38 -

the timeliness of the appeals from the dates on which final judgments were entered against Appellants, and we find that the aforementioned appeals are timely. We now proceed to consider the merits of those issues which Appellants have standing to raise.

      B.      <u>Rule 23 Class Protections</u>

Although Appellants lack standing to challenge the substance of the bankruptcy court's orders, they are entitled to appeal if they can prove they were denied "the Rule 23 procedures intended to protect the rights of those unnamed class members." <u>Gottlieb</u>, 11 F.3d at 1009. <u>Gottlieb</u> does not, however, create a broad right of appeal. Appeal of the substantive rulings of the district court must be predicated on a showing that an unnamed class member was denied protections necessary to safeguard the due process rights to which they are entitled as members of the class. Thus, we address Appellants arguments that Fidelity was not an adequate representative for the class, and that notice provided to the class members was inadequate to protect the due process rights of the class members. With respect to the issue of notice, we consider three distinct arguments: (1) in case numbers 99-1468, 99-1477, and 99-1546, Appellants contend that the bankruptcy court abused its discretion by certifying the class because some class members did not receive actual notice of the action prior to certification;(2) in case numbers 99-1483, 99-1498, and 99-1523, Appellants

similarly contend that individual, actual notice is required to bind each member of a defendant class action; and (3) Appellants in case numbers 99-1468, 99-1477, and 99-1546 contend they were denied due process because class members were not notified of a last-minute change to the agreement providing class members with a right to opt out prior to a hearing to determine whether the agreement was fair to class members.  Finally, all Appellants challenge Fidelity's adequacy to serve as a class representative.  We address each argument in turn.

       1.    *Pre-Certification Notice*

Appellants in case numbers 99-1468, 99-1477, and 99-1546 first argue that class certification was improper because, in a Rule 23(b)(1) class, putative members are not able to opt out of the class, and therefore class members are disadvantaged if they cannot voice their objections before the district court rules on the issue of certification.

Within the bounds of due process, the decision of whether to order such notice and the form that such notice is to take is left to the discretion of the district court.  See, e.g., Zimmer Paper Prods. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985); Shelton v. Pargo, Inc., 582 F.2d 1298, 1309 (4th Cir. 1978).  Since none of the Appellants in these cases allege that they themselves lacked awareness of the certification proceedings, the true question presented here is whether the district court's failure to issue pre-certification notice to each

putative class member constituted a violation of the Appellate class members' due process rights and thus constituted an abuse of discretion under Rule 23(d)(2).

Although some individual members of the putative class may have lacked actual notice of the pending class certification, the Trustee served copies of the motion to certify a class and his supporting brief on all members of the class that were known at that time. Moreover, Appellants' counsel Bader appeared at the certification hearing and argued strenuously against class certification. Appellants have not alleged any specific argument that Bader could not raise or other prejudice that Bader suffered in defending his clients because some other putative class members did not receive actual notice.[16] After certifying the class, the district court ordered that class-wide notice be sent by first-class mail to all class members whose names were then known or could be identified through reasonable effort. We hold that the notice that was provided satisfied the demands of due process, and that the bankruptcy court did not abuse its discretion in certifying the class under these circumstances.[17]

_____

[16]Bader does not allege that Appellants in these cases were among those who did not receive actual notice.

[17]Appellants cite In re Temple, 851 F.2d 1269, 1272 (11th Cir. 1988), for the proposition that due process always requires notice to absent class members prior to certification of a mandatory class action. In Temple, the Eleventh Circuit granted the appellants' request for a writ of mandamus ordering the district court

(continued...)

- 41 -

## 2. *Actual Notice in Defendant Class Actions*

Similarly, Appellants in case numbers 99-1483, 99-1498, and 99-1523 contend that the notice was insufficient to satisfy the requirements of the Due Process Clause because, in a defendant class action, all of the members of the defendant class are entitled to actual notice before they can be bound to a judgment. Appellant Vanguard Group, Inc., specifically alleged that it did not receive notice of the final judgment entered against it in the case, although it has not alleged whether or not it received prior notices mailed in the case.

Although Rule 23 expressly contemplates defendant class actions, see Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as

---

[17](...continued)
to vacate its order of class certification because it had not issued pre-certification notice to members of the putative class. Id. Temple is distinguishable, however. In that case, none of the putative class members were apprised of the certification proceedings, and the decision to certify a Rule 23(b)(1)(B) class was made in essentially a non-adversarial setting in which no forceful arguments against certification were presented, the district court's determination that the requirements of Rule 23(b)(1)(B) were met was held to be speculative, and defendants who were already participating in related litigation suffered prejudice as their cases were stayed and were "essentially move[d] . . . back to square one." Id. at 1271-72. No similar circumstances are present in the case at hand.

Likewise, we reject Appellants' invitation to reverse because actual, pre-certification notice may be required in defendant class actions even though it is not required for plaintiff class actions. Assuming without deciding that actual notice is required by the Due Process Clause before members of a defendant class action can be bound by a judgment for money damages and that such notice must be given before class certification, in this case Appellants do not allege that they themselves lacked actual notice of the proceedings either prior to certification or during the pendency of the class action.

representative parties . . . ." (emphasis added)), Rule 23 imposes no special procedural requirements to protect the interests of unnamed defendant class members vis-à-vis plaintiff class members. The Bankruptcy Court's certification order nevertheless required that the members of the class be notified of the action itself, and the Trustee sent class members a second form of notice informing class members of the settlement fairness hearing. Of the 6,423 notices of the settlement hearing that were mailed, 4,968 were actually received by the class members. Based on these results, Appellants contend that due process was not satisfied because, "[w]hile the best notice practicable may satisfy due process with respect to plaintiff class members, it is submitted that defendant class members must be given actual notice."

Appellants have cited no cases discussing a court's duty to provide adequate notice to absent defendant class members. It is true, however, that the Supreme Court has held that while "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause . . . there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the case." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). Nevertheless, the standard governing this due process right is not actual notice to each party intended to be bound by the adjudication of a representative action.

See id. at 313-14 ("A construction of the Due Process Clause which would place impossible or impracticable obstacles in the way could not be justified."). Rather, the Court has held that notice must be "reasonably calculated, under all the circumstance, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 314; see also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974). As such, in a class action brought under Rule 23(b)(3), the Supreme Court has stated that absent class members' procedural and due process rights are satisfied by "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." Id. (citing Mullane, 417 U.S. at 174).

In this case, despite Appellants' observation that many defendant class members indeed did not actually receive the notices that were sent to them, Appellants have made no showing that the notice was not reasonably calculated to apprise the absent class members of the action, or that some better method of notification offered a practicable means of notifying the class. Accordingly, we reject Appellants' contention that the notice provided was insufficient to satisfy

the dictates of due process. Hence, it follows that Appellants cannot establish a right to challenge the lower courts' substantive decisions on that basis.[18]

### 3. *Notice of Class Settlement*

In addition, although Appellants do not allege that notice informing class members of the settlement agreement was defective at the time it was given, Appellants in case numbers 99-1468, 99-1477, and 99-1546 allege that new notice should have been provided after the Trustee agreed to the class representative's demand for the inclusion of opt-out rights for class members who wished to reject the settlement in its entirety.

Rule 23(e) provides, "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." "While due process and Rule 23(e) require notice of a settlement to be given, the content and form of that notice are left to the court's discretion. The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options." Gottlieb, 11 F.3d at 1013.

---

[18]We express no view, however, as to whether individual members of the defendant class might be able to establish a lapse in due process because they lacked actual notice of the action, such that they might successfully challenge the binding effect of the settlement as to themselves in a collateral action.

Although the provision for opt-out rights was clearly important to the defendant class members, we hold that the notice was sufficient to protect the rights of class members under Rule 23(e) and the Due Process Clause. Rule 23(e) "provides a check against settlement dynamics that may 'lead the negotiating parties – even those with the best intentions – to give insufficient weight to the interests of at least some class members.'" In re Vitamins Antitrust Class Actions, 215 F.3d 26, 30 (D.C. Cir. 2000) (quoting Fed. Judicial Ctr., Manual for Complex Litigation § 30.42, at 238-40 (3d ed. 1995)). "Class members must be given an opportunity to convince the court that the settlement proposed would not be fair, adequate, or reasonable." Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993). In this case, the addition of opt-out rights merely expanded the rights of class members and gave members the right to opt out after they saw all of the terms of the settlement. Therefore, we see no way that the court's failure to provide new notice of the opt-out rights prior to accepting the settlement gave rise to a risk that unfavorable terms would be forced upon some class members or otherwise diminished class members' ability to bring objections before the court. Accordingly, we hold the district court did not abuse its discretion by failing to notify class members of their opt-out rights prior to conducting a fairness hearing of the settlement's terms.

4. *Adequacy of Representation*

Finally, Appellants contend that Fidelity was not an adequate representative for the class, both because its interests were not typical of those of the absent class members, and because Fidelity failed to move for dismissal or summary judgment on grounds which Appellants believed would have been successful.[19]  Even if Fidelity was an appropriate representative at the commencement of the proceedings, Appellants contend that the settlement agreement's provision for attorney's fees created a conflict of interest that rendered Fidelity inadequate for the purposes of evaluating the settlement itself.

"A party seeking to certify a class is required to show under a strict burden of proof, that all the requirements of Fed. R. Civ. P. 23(a) are clearly met," Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir. 1988) (quotation marks and alterations omitted), including that the class is adequately represented by a named party. Once the decision to certify a class has been made, the court remains under a continuing duty to monitor the adequacy of representation to ensure that class counsel provides zealous, competent representation through the proceedings and to address conflicts of interests if they develop.  See, e.g., Key v. Gillette Co.,

_____

[19]Specifically, Appellants contend that Fidelity erred by failing to move for dismissal or summary judgment on grounds that the Integra Reorganization Plan and settlement with the Hallwood Group acts to bar Integra's creditors from seeking recovery from the shareholders.  In the alternative, Appellants contend that Fidelity should have moved to vacate the injunction so that class members could seek indemnification from the Hallwood Group for any damages recovered against them.

782 F.2d 5, 7 (1st Cir. 1986); In re Fine Paper Antitrust Litig., 617 F.2d 22, 27 (3d Cir. 1980).

Fidelity's purported conflicts did not render it inadequate to represent the class either at the beginning of the proceedings or at any later stage of the litigation. Although we recognize that Fidelity's potential liability far exceeded that of any other class member, its interests were aligned with those of the other class members in that all concerned wished to limit their liability to the lowest possible amount. Moreover, Fidelity's ownership of a large block of shares would have created a greater incentive to bring the per-share costs of settlement down to the lowest possible level. For similar reasons, although Fidelity had fiduciary duties to its shareholders in addition to its responsibilities to the class, we do not believe those duties were in conflict because Fidelity's duty to each was vigorously to litigate the class issues and to reduce the class liability as much as possible.

Likewise, the settlement agreement's provision for partial payment of Fidelity's expenses in litigating the suit, while potentially troubling, does not in and of itself render Fidelity inadequate. Cf. Fed. Judicial Ctr., Manual for Complex Litigation, § 30.42, at 239 (3d ed. 1995) (noting "the simultaneous negotiation of class relief and attorneys' fees creates a potential for conflict"). Rather than imposing a per se ban on simultaneous negotiations on the merits of

an action and provisions for attorneys' fees, courts have instead focused on the results of such negotiations and their overall fairness to the parties. See Strong v. Bellsouth Telecomms., 137 F.3d 844, 849 (5th Cir. 1998); Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 524 (1st Cir. 1991). In this case, the district court did not abuse its discretion in concluding that Fidelity remained an adequate representative notwithstanding that the settlement agreement created a pool to offset some of their litigation costs. Therefore, we do not hold that the provision for attorneys fees in the settlement agreement, without more, rendered Fidelity an inadequate representative. We see nothing in this fee arrangement that rendered Fidelity conflicted or unfit to serve as a representative party or its attorneys to serve as class counsel.

Finally, we reject Appellants' contention that Fidelity's failure to rely on the terms of the Hallwood Settlement in its dispositive motion or to attempt to join the Hallwood Group as a third-party defendant rendered it inadequate. Fidelity conducted extensive discovery on behalf of the class, filed a motion for dismissal or summary judgment, conducted extended negotiations with the trustee after that motion failed, and filed slightly fewer than 400 pages of legal analysis and factual support for its recommendation that the district court accept the settlement. This analysis specifically outlined the risk of liability, weighed the possibility of successful affirmative defenses, and considered both the exposure

to damages that each of the defendants would face in the event of an unsuccessful trial and the expense and delay that would accompany continued litigation.  In light of this record, Appellants' naked assertion that failure to present these isolated arguments rendered Fidelity inadequate is not persuasive.

## III.  CONCLUSION

We hold that each of the appellants in each of the listed appeals lack standing to bring these appeals.  Accordingly, we DISMISS appeals numbered 99-1344, 99-1416, 99-1468, 99-1477, 99-1483, 99-1498, 99-1523, and 99-1546.